IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18CV93

| | |
|---|---|
| GEORGE SURVANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| CHARTER COMMUNICATIONS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court upon Defendant's Motion to Dismiss Plaintiff's Breach of Contract Claim. The motion has been fully briefed and is ripe for disposition.

## I. FACTUAL BACKGROUND

Plaintiff was an employee of Defendant's predecessor, Time Warner Cable, Inc. ("TWC"). Plaintiff was hired by TWC in 2012 as the Senior Director of Fleet Management and received numerous industry awards. Plaintiff and TWC entered into a 2011 Stock Incentive Plan ("SIP") pursuant to which TWC granted certain "Restricted Stock Unit" ("RSU") awards to Plaintiff on various occasions during his employment. The RSU awards had various vesting dates set forth in the respective RSU Grant Notices. The RSU Grant Notices each provided that the grants were governed by the terms of the SIP and the applicable "Special Restricted Stock Units Agreement" ("RSU Agreements"). The SIP provided that the company's decisions regarding any "interpretation and administration of the Plan . . . shall lie within its sole and absolute discretion and shall be final, conclusive and binding on all parties . . . ." (Doc. No. 18-1, ¶ 4(d)).[1] The RSU Agreements stated that the RSUs would be forfeited if Plaintiff failed to

---

[1] Plaintiff specifically refers to and bases his breach of contract claim on incentive awards issued under the SIP (Am. Compl. ¶ 22). Accordingly, the Court may properly consider this document on a Rule 12(b)(6) motion. *American*

1

maintain continual employment with TWC or an affiliate from the date of the grant until the identified vesting date. (Doc. No. 18-3, ¶ 4(a); Doc. No. 18-4, ¶ 4(a)).[2] An exception to the forfeiture clause occurred if Plaintiff's employment ended after TWC was acquired by another company. (Doc. No. 18-3, ¶ 5(e); Doc. No. 18-4, ¶ 5(e)). The exception, however, would not apply to employees terminated for "cause" based on: "(iii) willful misappropriation, embezzlement, fraud or any reckless or willful destruction of Company property having a significant adverse financial effect on the Company or a significant adverse effect on the Company's reputation; [or] (iv) willful and material breach of any statutory or common law duty of loyalty to the Company having a significant adverse financial effect on the Company or a significant adverse effect on the Company's reputation." (Doc. No. 18-3, ¶ 1(a)(iii) & (iv); Doc. No. 18-4, ¶ 1(a)(iii) & (iv)). The RSU Agreements further provide that: "The determination by the Company as to the existence of 'Cause' will be conclusive on the Participant." (Doc. No. 18-3, ¶ 1(a); Doc. No. 18-4, ¶ 1(a)).

In 2016 TWC was acquired by the Defendant. Plaintiff was informed that his position was being eliminated, but that he could apply for a similar position with Defendant entitled "Vice President of Fleet Management" or choose to voluntarily leave and take the benefits package he had been promised which included the immediate vesting of his unvested stock. Plaintiff decided to apply for the position of Vice President of Fleet Management. However, Plaintiff was ultimately not selected for the position and alleges that the position was offered to a much younger and less qualified individual.

---

*Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (court may consider documents not attached to complaint where they are integral to and explicitly relied on in complaint).
[2] Plaintiff also specifically refers to and bases his breach of contract claim on the RSU Grant Notices.

After Defendant was not offered the position of Vice President of Fleet Management, and prior to March 9, 2017, Plaintiff and Defendant agreed that Plaintiff would separate from the company on a specified date, constituting a termination without cause and entitling Plaintiff to immediate vesting of stock pursuant to the "benefits package" agreement and the RSU Agreements. However, Plaintiff alleges that thereafter he was subjected to a pretextual investigation and ultimately terminated on March 17, 2017. Defendant has taken the position that Plaintiff was terminated for cause and thus his unvested RSUs are thereby forfeited. On April 17, 2018, Plaintiff filed an Amended Complaint (Doc. No. 14), asserting claims for termination in violation of the Age Discrimination in Employment Act ("ADEA"), state law Wrongful Termination, and state law Breach of Contract. Defendant has moved to dismiss the breach of contract claim pursuant to Rule 12(b)(6).

## II.  DISCUSSION

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the plaintiff's claims. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, the plaintiff must allege sufficient facts to state the elements of the claim asserted. *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint must state claim that is "plausible on its face"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The SIP and RSU Agreements all specify that they are governed by New York law without regard to conflicts of laws. (Doc. No. 18-1, ¶ 19; Doc. No. 18-3, ¶ 17; Doc. No. 18-4, ¶ 17). Accordingly, Plaintiff's breach of contract claim must be evaluated under New York law. *See Johnston County v. R.N. Rouse & Co.*, 414 S.E.2d 30, 33 (N.C. 1992) ("[A] choice of law provision[ ] names a particular state and provides that the substantive laws of that jurisdiction will be used to determine the validity and construction of the contract, regardless of any conflicts between the laws of the named state and the state in which the case is litigated.").

Under New York law, to state a claim for breach of contract, a plaintiff must allege (1) a contract between the parties; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages flowing from the breach. *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994). "When pleading these elements, a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue." *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002). Where the challenged conduct is consistent with the unambiguous terms of the contract, a complaint cannot state a claim for breach of contract. *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) ("Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract.").

"It is well established under New York law that '[a]n employee's entitlement to a bonus is governed by the terms of the employer's bonus plan.'" *O'Dell v. Trans World Entm't Corp.*, 153 F. Supp. 2d 378, 397 (S.D.N.Y. 2001) (quoting *Hall v. United Parcel Serv. of Am., Inc.*, 76 N.Y.2d 27, 36, 556 N.Y.S.2d 21, 555 N.E.2d 273 (1990)). "[A]n employee cannot recover for an employer's failure to pay a bonus under a plan that provides the employer with absolute discretion in deciding whether to pay the bonus." *Smith v. Railworks Corp.*, No. 10 Civ.

3980(NRB), 2011 WL 2016293, at *3 (S.D.N.Y. May 17, 2011); *Bessemer Trust Co., N.A. v. Branin*, 618 F.3d 76, 92 (2d Cir. 2010) (affirming dismissal where bonus provision "reserve[d] to the Salary Committee the decision to award or not to award a bonus, and in what amount")).

This same analysis applies with equal force where the "bonus" forming the basis of the plaintiff's claim is a long-term incentive, such as a restricted stock unit award. For example, in *Karmilowicz v. Hartford Financial Services, Inc.*, 494 F. App'x 153 (2d Cir. 2012), the plaintiff asserted a breach of contract claim based on various long-term incentive plans, each of which "expressly stated that potential payments were within the sole, absolute, and exclusive discretion of [the employer], that no employee had a right to any such payment until it was, in fact, paid, and that active employment . . . was a condition precedent to receiving payment." *Id.* at 157. The Second Circuit found that "[g]iven the plain language in the compensation plans, the District Court was clearly correct to conclude that Karmilowicz could not state a claim for breach of contract under New York law." *Id*.

Similarly, in *Timian v. Johnson & Johnson*, No. 6:15-CV-06125 MAT, 2015 WL 6454766 (W.D.N.Y. Oct. 26, 2015), the plaintiff brought a breach of contract claim against her former employer for improperly withholding unvested restricted stock units. There, as here, the applicable plan under which the restricted stock units were awarded granted the employer wide-ranging and exclusive authority to determine the circumstances under which awards would be vested or forfeited. *Id*. at *6. The court rejected plaintiff's argument that the forfeiture provisions did not apply in her situation and granted the employer's motion to dismiss because the agreement provided the employer with discretion to interpret the plan's provisions. *Id.*

Here, the SIP explicitly provides Defendant with the "sole and absolute discretion" to make decisions regarding interpretation and administration of the plan. (Doc. No. 18-1, ¶ 4(d).)

Moreover, the RSU Agreements provided Defendant with complete and binding discretion to decide whether Plaintiff's termination constituted "cause" under Sections 1(a)(iii) or (iv). Given the clear discretion provided to Defendant in making decisions regarding the vesting and forfeiture of RSU awards, Plaintiff cannot, as a matter of law, challenge Defendant's decisions through a breach of contract claim.

Plaintiff, in support of his argument against dismissal, cites the case of *Lam v. American Express Company*, 265 F. Supp. 2d 225 (S.D.N.Y. 2003), and argues that the SIP and RSU Agreements do not provide Defendant with the absolute discretion "to modify or cancel an incentive." The "discretion" language in *Lam*, however, is far more limited that that found in the documents at issue here. *Lam* involved a reduction in incentive payment by the plaintiff's employer where the disclaimer language did not "provide for general managerial discretion to reduce, without explanation of any basis whatsoever, individual incentive plan payments described in the Employment Agreement." *Lam*, 265 F. Supp. 2d at 238. Instead, the disclaimer language merely provided that the incentive plan payment "could be 'carried out in accord with the Plan's terms and conditions [here, 'governing plans and documents'], and not simply at [American Express's] discretion." *Id.*. Thus, the agreement in *Lam* did not endow the employer with absolute discretion.

In contrast, Defendant's Agreements specifically provide that: any "interpretation and administration of the Plan . . . shall lie within its sole and absolute discretion and shall be final, conclusive and binding on all parties . . ." and that "The determination by the Company as to the existence of 'Cause' will be conclusive on the Participant." (Doc. No. 18-1, ¶ 4(d)); (Doc. No. 18-3, ¶ 1(a)). The *Lam* court specifically acknowledged that such language cannot form the basis for a breach of contract claim as a matter of law ("It is well settled that a promise to pay

incentive compensation is unenforceable if the written terms of the compensation plan make clear that the employer has absolute discretion in deciding whether to pay the incentive."). *Lam*, 265 F. Supp. 2d at 237.

Plaintiff also argues that certain sections of the SIP Agreement and the RSU Agreement purportedly limit Defendant's discretion. However, the provisions cited by the Plaintiff either have no application to the issue at hand or do not operate to limit the Defendant's discretion.

IT IS THEREFORE ORDERED that Defendant's Partial Motion to Dismiss Plaintiff's Breach of Contract Claim is hereby GRANTED.

Signed: August 24, 2018

Graham C. Mullen
United States District Judge